[No. B168901,Second Dist., Div. Three. Oct. 29, 2004.]

KEVIN BLANCHARD et al., Plaintiffs and Appellants, v.
DIRECTV, INC. et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for
publication with the exception of part III of the Discussion.

**COUNSEL**

Lakeshore Law Center and Jeffrey Wilens for Plaintiffs and Appellants.

Quinn Emanuel Urquhart Oliver & Hedges, Dale H. Oliver, Michael E. Williams and Marc R. Rosner for Defendants and Respondents.

**OPINION**

**ALDRICH, J.—**

## INTRODUCTION

We are asked to apply the newly enacted Code of Civil Procedure section 425.17, subdivision (b), which expressly excludes public-interest lawsuits from the reach of anti-SLAPP[1] special motions to strike (§ 425.16).

---

[1] " 'SLAPP is an acronym for "strategic lawsuit against public participation." ' [Citation.]" (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 207, fn. 1 [12 Cal.Rptr.3d 786].)

DIRECTV sent demand letters to thousands of people who purchased certain devices that can pirate DIRECTV's television programming, requesting the recipients cease using the devices. Plaintiffs, recipients of these demand letters, filed their complaint against DIRECTV, alleging that the conduct of mailing the demand letters was an unfair business practice (Bus. & Prof. Code, § 17200 (the UCL)), a violation of plaintiffs' civil rights, and extortion. The trial court granted the special motion of DIRECTV to strike (Code Civ. Proc., § 425.16) plaintiffs' complaint and awarded DIRECTV attorney fees. Plaintiffs appeal.

Plaintiffs contend Code of Civil Procedure section 425.17, subdivision (b) protects their UCL claim from dismissal under the anti-SLAPP procedure. In the published portion of this opinion (parts I & II), we hold: (1) plaintiffs' UCL claim was not brought in the "public interest" and therefore is not entitled to protection under section 425.17, subdivision (b) from the anti-SLAPP special motion to strike; (2) with respect to the merits of the anti-SLAPP motion, the trial court did not err in granting DIRECTV's motion to strike and dismissing the complaint; (3) DIRECTV's demand letters are absolutely privileged under Civil Code section 47, subdivision (b).

In the unpublished portion of this opinion (part III), we hold: (4) the court did not abuse its discretion in fixing the attorney fee award. Accordingly, we affirm the judgment in all respects.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *DIRECTV.*

DIRECTV provides satellite television programming by subscription or on a pay-per-view basis to millions of households nationwide. To secure its system and prevent unauthorized reception of its programs, DIRECTV electronically scrambles, or encrypts, its satellite transmissions. DIRECTV also investigates and prosecutes "hackers" and "pirates," i.e., those who circumvent the encryption to obtain unauthorized use of the services.

With the aim of protecting its business interests, DIRECTV obtained several writs of seizure authorizing the United States Marshal to seize and impound products and business records from designers, manufacturers, and distributors of equipment used to decrypt and misappropriate DIRECTV's satellite signal. During the seizures, DIRECTV obtained customer lists identifying individuals who purchased decryption devices in response to advertising aimed at DIRECTV's subscribers. The devices enable users to steal DIRECTV's programming.

DIRECTV then sent demand letters to thousands of customers thus identified, explaining that use of illegal signal-theft equipment to gain access to DIRECTV's programming violated federal law (the Communications Act, 47

U.S.C. § 605 et seq. & the Wiretap Act, 18 U.S.C. §§ 2510–2521), and seeking cooperation of the letters' recipients to stop the pirating. The letters provided the recipients with an opportunity to resolve the matter by way of settlement before commencement of suit. Thereafter, DIRECTV filed federal lawsuits nationwide against more than 600 people who purchased the pirating devices.[2]

### 2. *The class action lawsuit.*

Plaintiffs[3] are recipients of DIRECTV's demand letters. To solicit plaintiffs for this case, counsel searched Internet sites promoting satellite television piracy. Plaintiffs' complaint against DIRECTV[4] alleges three causes of action: (1) violation of the UCL, (2) interference with civil rights (Civ. Code, § 52.1), and (3) extortion and duress.

The operative complaint alleges "the demands constitute extortion." The complaint also alleges the following: none of the pieces of electronic equipment triggering the demand letters is contraband or illegal. "At most, they are pieces of hardware that have many innocent uses, but which under certain circumstances and if certain other conditions are met, *could* (in knowledgeable hands) be used to receive unauthorized satellite transmissions." (Original italics.) DIRECTV sent demand letters to every name found on customer lists without first ascertaining whether the letter recipients actually possessed the hardware and used it in some improper fashion. The purpose of the demand letters was to intimidate and coerce the recipients into forfeiting the equipment and to extort money. Many of the statements contained in the demand letters were false, misleading, or deceptive. For example, the letter repeatedly implies that, unless the recipient settled, DIRECTV would seek monetary damages and "the recipient could face civil and criminal prosecution." The demand letters also contained "[a] list of demands which . . . must be met in timely fashion" or DIRECTV threatened to " 'initiate legal proceedings[,]' " and " 'abandon its attempts to negotiate.' "

---

[2] At oral argument on the anti-SLAPP motion in the trial court, DIRECTV's attorney represented there were already "thousands" of such defendants. At oral argument before this court, counsel for DIRECTV stated it could establish that, as of the summer of 2004, it had filed federal lawsuits against more than 24,000 individuals across the United States.

[3] Plaintiffs are Kevin Blanchard, William Cooper, John Lund, Michael Spencer, Rod Sosa, Gary Whittaker, and Rodney Bylsma. The complaint alleges the plaintiffs are representatives of an alleged class of letter recipients. The putative class is divided into two subclasses, those who paid DIRECTV in response to the demand letters (payers) and those who did not (nonpayers). The class was not certified.

[4] Only DIRECTV moved to strike the complaint under Code of Civil Procedure section 425.16. Therefore, only DIRECTV is a party to this appeal.

The complaint further alleges that a secondary demand letter was sent to some of the plaintiffs several weeks or months later. The second letter reiterated the accusations of piracy and stated that, unless the recipient contacted the sender within days, a lawsuit would be filed based on a draft complaint that was enclosed with the letter.

Plaintiffs' complaint alleged that the conduct of sending the demand letters (1) violated the UCL, (2) interfered with plaintiffs' exercise of their civil right to be from personal insult, defamation, and injury to their personal relations (Civ. Code, § 52.1), and (3) constituted extortion and duress.

### 3. *The special motion to strike pursuant to the anti-SLAPP statute.*

DIRECTV filed its special motion to strike the complaint in its entirety pursuant to Code of Civil Procedure section 425.16, commonly referred to as the anti-SLAPP statute. DIRECTV asserted first that the complaint arose from DIRECTV's demand letter, which letter was sent in anticipation of litigation and was thus an exercise of DIRECTV's constitutional right to petition to seek redress of grievances protected by the anti-SLAPP statute. (§ 425.16.) Second, DIRECTV asserted, plaintiffs could not carry their burden to show a reasonable probability of success on the merits of their lawsuit because DIRECTV's demand letter was immune from liability under the litigation privilege. (Civ. Code, § 47, subd. (b).)

Plaintiffs opposed the special motion to strike by addressing only the second prong of the two-part test under Code of Civil Procedure section 425.16. They presented evidence in an attempt to show a prima facie case with respect to all three causes of action. On the issue of DIRECTV's affirmative defense of the litigation privilege, plaintiffs asserted they had evidence to create a triable issue about its applicability. In particular, they attempted to show that (1) not all of the devices are used for illegal purposes; (2) the records that DIRECTV seized did not indicate how the devices would be used; (3) many demand letters were sent after the statute of limitations had run; and (4) the only judgments DIRECTV had obtained so far in their federal litigation on the demand letters across the United States were default judgments.

DIRECTV responded by submitting, through a request for judicial notice, excerpts from *DIRECTV, Inc. v. Derek E. Trone, et al.* (Case No. CV 02-05194 PA (RCx)), in which the United States District Court for the Central District of California granted DIRECTV's motion for partial summary judgment against a manufacturer and seller of signal theft devices in violation of the Communications Act (47 U.S.C. § 605(e)(4)). The court in *Trone* ruled, while the electronic devices might be used for lawful purposes,

that the issue under the Communications Act is "whether [the defendant] knew, or had reason to know, that the devices were 'primarily of assistance' in the unauthorized decryption of direct-to-home satellite system." (47 U.S.C. § 605(e)(4).) DIRECTV also submitted a copy of the writ to the United States Marshal to seize "Any and all devices . . . and [a]ny other hardware device designed or intended for the purpose of circumventing DIRECTV's conditional access system."

### 4. The trial court's ruling.

The trial court granted DIRECTV's anti-SLAPP motion. (Code Civ. Proc., § 425.16.) The court found that all of plaintiffs' claims arose from the demand letters, which "[t]he parties agree . . . constitute protected communications" in furtherance of DIRECTV's right of petition under the United States and California Constitutions.

The burden then shifted to plaintiffs to show a probability that they would prevail on their claims. The trial court found that DIRECTV's demand letters were absolutely protected by the litigation privilege (Civ. Code, § 47, subd. (b)) because the letters were sent in good faith, serious contemplation of litigation. After sending the demand letters, the court noted, DIRECTV filed more than 600 lawsuits. Accordingly, the trial court granted DIRECTV's anti-SLAPP motion.

After the court awarded DIRECTV attorney fees in the amount of $97,222.10, plaintiffs' appeals ensued. (Code Civ. Proc., § 425.16, subd. (j).)

## DISCUSSION

### I. The newly enacted exception to the anti-SLAPP motion (Code Civ. Proc., § 425.17).

Plaintiffs argue that the newly enacted Code of Civil Procedure section 425.17 applies to the present case. Hence, even if their entire complaint were previously vulnerable to a motion to strike under section 425.16, their UCL cause of action is now immune to that procedure.[5]

---

[5] The trial court did not consider this exception to the anti-SLAPP motion because Code of Civil Procedure section 425.17 had not become effective at the time the court ruled on DIRECTV's motion to strike under section 425.16. (Stats. 2003, ch. 338, § 1.) DIRECTV argues that section 425.17 does not govern this case because it cannot be applied retrospectively. However, it is now settled that section 425.17 can be applied to an order that was entered before the effective date of the new statute. (*Brenton v. Metabolife International, Inc.* (2004) 116 Cal.App.4th 679, 687, 689–691 [10 Cal.Rptr.3d 702]; *Metcalf v. U-Haul International, Inc.* (2004) 118 Cal.App.4th 1261, 1266 [13 Cal.Rptr.3d 686]; *Physicians Com. for*

■ By way of background, the anti-SLAPP statute (Code Civ. Proc., § 425.16) subjects certain claims—those which arise from acts in furtherance of the federal and state constitutional rights of petition or free speech in connection with a public issue—to a special motion to strike, unless the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim. (§ 425.16, subd. (b)(1).[6]) The anti-SLAPP statute is designed to encourage participation in matters of public significance through the valid exercise of the constitutional rights and to prevent the chilling of such participation by the abuse of the judicial process. (§ 425.16, subd. (a).)

■ Based on its finding that there had been a "disturbing abuse of Section 425.16," the Legislature enacted Code of Civil Procedure section 425.17, to limit application of section 425.16 to specified types of actions. (§ 425.17, subd. (a).) According to the sponsor of Code of Civil Procedure section 425.17, Senator Sheila Kuehl, the same types of businesses who used the SLAPP action were inappropriately using the anti-SLAPP motion against their public-interest adversaries. Hence, the Legislature expressly designed subdivision (b) of section 425.17 to prevent the use of the anti-SLAPP device against "specified *public interest actions,*" among others. (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 515 (2003–2004 Reg. Sess.) as amended June 27, 2003, p. 2.) Subdivision (b) of section 425.17 makes the anti-SLAPP procedure inapplicable to "any action brought *solely in the public interest* or *on behalf of the general public. . . .*" (§ 425.17, subd. (b), italics added.)

However, "not all public interest or class actions [are intended to be] automatically exempt from the anti-SLAPP law." (Sen. Com. on Judiciary, Rep.

---

*Responsible Medicine v. Tyson Foods* (2004) 119 Cal.App.4th 120, 129–130 [13 Cal.Rptr.3d 926], review den. Sept. 22, 2004; cf. *Jewett v Capital One Bank* (2003) 113 Cal.App.4th 805, 815, fn. 5 [6 Cal.Rptr.3d 675].) As the statute constitutes a change in procedure only—i.e., it regulates the conduct of ongoing litigation and does not impose new, additional, or different liabilities on past conduct—Code of Civil Procedure section 425.17 works in the future. Hence, applying the new statute to a trial court judgment that predated its effectiveness does not raise retrospectivity concerns. (*Brenton, supra,* at pp. 687–691.) As the reviewing court, we impose the law that is in force when our decision is rendered. (*Tyson, supra,* 119 Cal.App.4th at p. 125.) Thus, we must determine whether, as a question of law, plaintiffs' UCL claim falls within the ambit of subdivision (b) of Code of Civil Procedure section 425.17. If so, that section would defeat DIRECTV's effort to strike that cause of action under section 425.16, notwithstanding the lawsuit had already been filed and the trial court's order had already been entered. (*Tyson, supra,* at p. 128.)

[6] The anti-SLAPP statute establishes that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).)

on Sen. Bill No. 515 (2003–2004 Reg. Sess.) p. 13.) Three conditions must exist to invoke the protections of subdivision (b) of Code of Civil Procedure section 425.17.

In particular, subdivision (b) of section 425.17 of the Code of Civil Procedure, states: "Section 425.16 does not apply to any action brought solely in the public interest or on behalf of the general public *if all of the following conditions exist*:

"(1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision.

"(2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.

"(3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." (Italics added.)

■ The Legislature "sharply defined" the public-interest exception of subdivision (b) of section 425.17 by reference to the three "factors corresponding to the state's private attorney general statute" so that subdivision (b) "parallels the existing exception for actions by the attorney general and public prosecutors." (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 515, *supra*, as amended June 27, 2003, pp. 11–12.) The three conditions of Code of Civil Procedure section 425.17, subdivision (b)(1) through (3) mirror the three elements for determining the eligibility for a fee award under the private attorney general doctrine as codified in section 1021.5. (See *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 934–935 [154 Cal.Rptr. 503, 593 P.2d 200] [establishing three elemental criteria for fees under the private attorney general doctrine codified in § 1021.5].)

The second and third elements of Code of Civil Procedure section 425.17, subdivision (b) are absent here. Accordingly, plaintiffs' action does not fall within the new exception to the anti-SLAPP procedure.

■ With respect to the second element, there is no question but that plaintiffs' UCL claim, if successful, would not "enforce an important right affecting the public interest." (Code Civ. Proc., § 425.17, subd. (b)(2).) Based on the allegations of the complaint, plaintiffs want to enjoin DIRECTV from sending this particular demand letter concerning this specific electronic

device to users of this device. They are not seeking to assert some general right not to receive demand letters or notices. Nor do they seek a declaration about demand letters in general. Notwithstanding the number of the recipients of the letters rank in the thousands, there is no public interest principle being vindicated by this action. (*Woodland Hills Residents Assn., Inc. v. City Council, supra,* 23 Cal.3d at pp. 939–940.) Regardless of the outcome of this lawsuit, properly worded demand letters will remain a standard practice designed to avoid the necessity of legal action. (*Fuhrman v. California Satellite Systems* (1986) 179 Cal.App.3d 408, 420–421 [225 Cal.Rptr. 140, 231 Cal.Rptr. 113] [well-established legal practice to communicate promptly with potential adversaries, setting out the claims on them, urging settlement, and warning of alternative of judicial action]; *Larmour v. Campanale* (1979) 96 Cal.App.3d 566, 568 [158 Cal.Rptr. 143] [same]; *Lerette v. Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 577 [131 Cal.Rptr. 592] [same].) In fact, sometimes notices are required by statute. (See, e.g., Code Civ. Proc., § 364 [90-day letter required before filing medical malpractice claim]; Gov. Code, § 910 et seq. [notice requirements under Tort Claims Act].) Therefore, if plaintiff's UCL claim were successful, it would establish no ringing declaration of the rights of all pirating-device purchasers, nor would it lead to a wholesale change in the practice of sending demand letters. (*Family Planning Specialists Medical Group, Inc. v. Powers* (1995) 39 Cal.App.4th 1561, 1569 [46 Cal.Rptr.2d 667], quoting from *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 167 [188 Cal.Rptr. 104, 655 P.2d 306] [no enforcement of public right where the plaintiffs enforced solely their own interests].)

More important, the third element, the so-called necessity and financial burden factor (Code Civ. Proc., § 425.17, subd. (b)(3)), is absent in this case. It has been said about this element that "the less direct or concrete a personal interest someone has, the more likely he or she will satisfy the element and be eligible for fees under the statute. Thus, in practice, the necessity and financial burden element of section 1021.5 tends to be analyzed like golf is scored: the lower the better." (*Hammond v. Agran* (2002) 99 Cal.App.4th 115, 122 [120 Cal.Rptr.2d 646].)

Courts first focus on what sort of financial stake the plaintiff had in the outcome (*Hammon v. Agran, supra,* 99 Cal.App.4th at p. 126), i.e., what the plaintiff hoped to gain financially from the litigation in comparison to what it cost. (*Id.* at p. 125.) Although there is some disagreement among the cases, the appropriate interest can be both pecuniary and nonpecuniary. (*Id.* at pp. 122–123.) The relevant inquiry is whether "the ' "cost of the [plaintiffs'] legal victory transcends [their] personal interest." ' " (*Id.* at p. 125, quoting from *Woodland Hills Residents Assn., Inc., supra,* 23 Cal.3d at p. 941.) Justice Sills succinctly distilled the cases: "[t]he [plaintiffs'] objective in the

litigation must go beyond—'transcend'—those things that concretely, specifically and significantly affect the litigant . . . to affect the broader world or 'general public' . . . ." (*Hammon v. Agran, supra,* at p. 127, citing *Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors* (2000) 79 Cal.App.4th 505, 516 [94 Cal.Rptr.2d 205].)

■ Here, plaintiffs cannot satisfy the "necessity and financial burden" factor of Code of Civil Procedure section 425.17, subdivision (b)(3). Plaintiffs' UCL claim is entirely personal to them. Plaintiffs seek an accounting to them and restitution to them of moneys they paid to DIRECTV. Given plaintiffs' UCL claim enforces no important public interest, the benefits that would be conferred on plaintiffs, if they were victorious in this lawsuit, far transcend any conceivable benefit to the general public. Plaintiffs' personal stake in this lawsuit—namely, not receiving these letters from DIRECTV about these devices—far exceeds the effect that this lawsuit could possibly have on the public at large. (*Williams v. San Francisco Bd. of Permit Appeals* (1999) 74 Cal.App.4th 961, 964 [88 Cal.Rptr.2d 565]; *Planned Parenthood v. City of Santa Maria* (1993) 16 Cal.App.4th 685, 691 [20 Cal.Rptr.2d 391].)

Our conclusion that plaintiffs in this case cannot avail themselves of Code of Civil Procedure section 425.17's protection from DIRECTV's special motion to strike comports with the stated purpose behind section 425.17, subdivision (b). The anti-SLAPP statute excepts from its sweep actions filed by public prosecutors, and so the amendment was designed to " 'provide a parallel protection when people are acting only in the public interest as private attorneys general, *and are not seeking any special relief for themselves.*' " (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 515, *supra,* as amended July 27, 2003, p. 12, italics added.) Suits "*motivated by personal gain are not exempted from the anti-SLAPP motion.* This is necessary . . . because there are some abusive uses of the unfair competition law that should be subject to the SLAPP motion . . . . [C]ases that are motivated by personal gain . . . would not be covered by the exemption." (*Ibid.,* italics added.) Because this lawsuit is not designed to confer a benefit upon anyone other than plaintiffs, it is only motivated by personal gain. Thus, as it only benefits plaintiffs, this UCL action is not covered by section 425.17's exception.

In arguing that Code of Civil Procedure section 425.17, subdivision (b) applies to this case precluding DIRECTV from striking the UCL cause of action, plaintiffs assert that the sheer number of demand letter recipients, and hence the massive size of the alleged class of plaintiffs, demonstrates that the complaint was brought in the public interest. Even if, by virtue of the size of the alleged class, success of the lawsuit might affect "a large class of persons" under the second element of section 425.17, subdivision (b), the

benefit it would confer would not be legally significant. Moreover, plaintiffs cannot meet the third element (§ 425.17, subd. (b)(3)), and all three factors must be met for the exception to apply. (§ 425.17, subd. (b).) No matter how they characterize their complaint, plaintiffs' stake is personal to them as recipients of this particular demand letter. They do *not* seek to protect the public's right to use these devices or to be free of demand letters. We are unconvinced by plaintiffs' portrayal of themselves as the public-interest David against the corporate Goliath. The complaint's prayer exposes this cause of action as motivated by personal gain. This lawsuit is not protected from the anti-SLAPP statute by section 425.17.[7]

To summarize, Code of Civil Procedure section 425.17 does not apply to this UCL claim because plaintiffs cannot demonstrate the second and third factors of subdivision (b). Because section 425.17, subdivision (b) does not protect plaintiffs' UCL claim, the trial court correctly entertained DIRECTV's special motion to strike under Code of Civil Procedure section 425.16.

### II. *The anti-SLAPP motion and the standard of appellate review.*

Having established that plaintiffs' UCL claim is not protected by the exception of Code of Civil Procedure section 425.17, we turn to the merits of DIRECTV's special motion to strike the complaint. (§ 425.16.)

### 1. *The purpose of the anti-SLAPP statute and the burdens of proof.*

As noted, the anti-SLAPP statute subjects a cause of action arising from an act taken in furtherance of the right of petition or free speech under the United States or California Constitution in connection with a public issue to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim. (Code Civ. Proc., § 425.16, subd. (b)(1) set forth *ante*, at fn. 6.)

Code of Civil Procedure section 425.16 subdivision (b)(1) involves a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity, namely that the act or acts of which the plaintiff complains

---

[7] Based on our holding, *ante*, we need not reach the question of whether Code of Civil Procedure section 425.17, subdivision (d) removes plaintiffs' UCL claim from the scope of the protection of section 425.17. Section 425.17, subdivision (d) states: "Subdivisions (b) and (c) do not apply to any of the following: [¶] . . . [¶] (2) Any action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program, or an article published in a newspaper or magazine of general circulation."

were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) " 'If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*HMS Capital, Inc. v. Lawyers Title Co., supra,* 118 Cal.App.4th at p. 211.)

In evaluating the special motion to strike and opposition, "[t]he court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence. Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to *determine if it has defeated that submitted by the plaintiff as a matter of law.* [Citations.] The trial court merely determines whether a prima facie showing has been made that would warrant the claim going forward. [Citation.]" (*HMS Capital, Inc. v. Lawyers Title Co., supra,* 118 Cal.App.4th at p. 212, italics added.)

" 'Whether plaintiffs have established a prima facie case is a question of law. [Citation.]' [Citation.]" (*HMS Capital, Inc. v. Lawyers Title Co., supra,* 118 Cal.App.4th at p. 212.) On appeal, "[w]e review the trial court's rulings on an anti-SLAPP motion de novo, conducting an independent review of the entire record. [Citations.]" (*Ibid.*)

> 2. *Plaintiffs cannot demonstrate a prima facie probability of success in their lawsuit under the second prong of the analysis of Code of Civil Procedure section 425.16.*

As explained, the threshold task is for DIRECTV, as defendant, to show that the challenged cause of action arises from protected activity. (*HMS Capital, Inc. v. Lawyers Title Co., supra,* 118 Cal.App.4th at p. 212.) Neither in their opposition to the anti-SLAPP motion, nor on appeal, do plaintiffs argue that DIRECTV failed to make this necessary showing. Effectively, therefore, plaintiffs have conceded that their lawsuit "arises from" DIRECTV's "free speech or petitioning activity" (Code Civ. Proc., § 425.16, subd. (b)(1)), with the result that their claims are subject to the anti-SLAPP statute. Indeed, plaintiffs cannot successfully argue that their complaint does not arise from DIRECTV's constitutionally protected right to petition for redress of grievances. The entire lawsuit is premised on DIRECTV's demand letter, sent in advance of, or to avoid, litigation to vindicate its right not to have its programming pirated.

Turning then to the second prong, because the lawsuit was subject to scrutiny under Code of Civil Procedure section 425.16, the burden shifted to plaintiffs to establish a prima facie probability of prevailing in the litigation.

DIRECTV argued, and the trial court agreed, that plaintiffs could not make this showing because the demand letters, which serve as the sole basis for the lawsuit, were absolutely privileged under Civil Code section 47, subdivision (b). Plaintiffs counter that they have presented sufficient evidence for a trier of fact to determine whether the litigation privilege applies in this case.

The litigation privilege protects a "publication or broadcast . . . [¶] . . . [¶] (b) In any . . . (2) judicial proceeding . . . ." (Civ. Code, § 47, subd. (b)(2).) The privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) to have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365]; *Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 262 [68 Cal.Rptr.2d 305].)

■ It has long been the law that communications that bear "some relation" to an anticipated lawsuit fall within the privilege. (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1194 [17 Cal.Rptr.2d 828, 847 P.2d 1044]; *Aronson v. Kinsella, supra*, 58 Cal.App.4th at p. 262.) The privilege has been broadly applied to demand letters and other prelitigation communications by attorneys. (*Rubin, supra*, 4 Cal.4th at pp. 1193–1194; *Knoell v. Petrovich* (1999) 76 Cal.App.4th 164, 169 [90 Cal.Rptr.2d 162].)

■ "[A] prelitigation statement is protected by the litigation privilege of section 47, subdivision (b) when the statement is made in connection with a proposed litigation that is 'contemplated in good faith and under serious consideration. [Citation.]' [Citations.]" (*Aronson v. Kinsella, supra*, 58 Cal.App.4th 254, 262; see *Silberg v. Anderson, supra*, 50 Cal.3d at p. 212; *Laffer v. Levinson, Miller, Jacobs & Phillips* (1995) 34 Cal.App.4th 117, 124 [40 Cal.Rptr.2d 233]; *Fuhrman v. California Satellite Systems, supra*, 179 Cal.App.3d at p. 421.) "[T]he good faith, serious consideration of litigation test is not . . . a test for malice and it is not a variation of the 'interest of justice' test." (*Aronson v. Kinsella, supra*, at p. 266.) Rather, it is "addressed to the requirement the statements 'have some connection or logical relation to the action. [Citations.]" (*Ibid.*) Thus, if the statement is made with a good faith belief in a legally viable claim and in serious contemplation of litigation, then the statement is sufficiently connected to litigation and will be protected by the litigation privilege. (*Ibid.*) If it applies, the privilege is absolute. (*Rubin v. Green, supra*, 4 Cal.4th at pp. 1202–1203.)

Plaintiffs contend the trial court erred in finding the litigation privilege applies here because there is a triable issue about whether DIRECTV sent the demand letters " 'with the good faith belief in a legally viable claim and in serious contemplation of litigation.' " They argue DIRECTV knew it could

never possibly sue all of the letter recipients. (1) The sheer number of demand letters sent, (2) the fact that four named plaintiffs who refused to settle have not been sued, and (3) the fact that DIRECTV sued only about 5 percent of the letter recipients, plaintiffs argue, all raise the inference that DIRECTV was not acting in serious contemplation of litigation.[8]

■ Apart from the fact that DIRECTV has initiated numerous lawsuits, which gives rise to the inference of connectedness, we conclude DIRECTV need not have filed lawsuits against every single letter recipient to be entitled to the privilege. The court credited DIRECTV's assertion it has already filed 600 such lawsuits, and DIRECTV represented to the trial court that it had filed thousands of suits. "[A]ccess to the courts is not an end in itself but only one means to achieve satisfaction . . . . If this can be obtained without resort to the courts—even without the filing of a lawsuit—it is incumbent upon the attorney to pursue such a course of action first [typically by a demand letter]." (*Lerette v. Dean Witter Organization, Inc., supra,* 60 Cal.App.3d at p. 577.) Any number of letter recipients may have settled with DIRECTV, or called DIRECTV explaining that they had either not purchased the devices, or had not engaged in illegal activity. To hold that DIRECTV must sue every recipient to invoke the privilege would defeat a purpose of the demand letter, namely to avoid litigation.[9]

■ Equally unavailing is plaintiffs' assertion that DIRECTV's demand letter was not sent in good faith and in serious consideration of litigation because DIRECTV knew it did not have a legally viable claim. The success of its *Trone* action (Case No. CV 02-05194 PA (RCx)), along with the existence of numerous lawsuits DIRECTV brought across the country (see, e.g., *DirecTV, Inc. v. EQ Stuff, Inc.* (C.D.Cal. 2002) 207 F.Supp.2d 1077,

---

[8] Plaintiffs also cite a declaration of Richard D. Moreno, who stated that he had collected the federal district court docket sheets from the courts in most states and reviewed the dockets of lawsuits filed by DIRECTV. He declared that "none of the foregoing docket sheets show[s] an entry of a final judgment in favor of DIRECTV and against any defendant based upon the adjudication of a dispositive motion or on the trial of the merits." Based on this declaration, plaintiffs argue that, of all the lawsuits DIRECTV actually filed, none has resulted in a final judgment other than a default, further giving rise to an inference that these letters were not sent in anticipation of litigation. We decline to infer a *lack* of connectedness from the default judgments. A defendant's failure to appear does not render DIRECTV's contemplation of litigation any less serious. We also decline to infer a lack of connectedness from the filing of 600 lawsuits, given that each one of the suits subjects DIRECTV to a malicious prosecution action if it is not seriously brought. Our view is only bolstered by DIRECTV's representation it has now filed approximately 23,400 additional lawsuits. Moreover, as Moreno's declaration was made on the declarant's information and belief, it may not be considered. (*HMS Capital, Inc. v. Lawyers Title Co., supra,* 118 Cal.App.4th at p. 212.)

[9] By this we do not mean to create a mathematical formula for determining the number of lawsuits that must be filed in comparison to the number of demand letters sent, in order to invoke the litigation privilege. We wish to make clear that, under the circumstances of this case, the privilege applies.

1084; *Directv, Inc. v. Perez* (N.D.Ill. 2003) 279 F.Supp.2d 962; *DIRECTV, Inc. v. Kaas* (N.D. Iowa 2003) 294 F.Supp.2d 1044) evinces DIRECTV's belief that it had a legally viable claim under federal law. Nor may plaintiffs avoid the litigation privilege by arguing that the statements were published to coerce a settlement. (*Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1148 [57 Cal.Rptr.2d 284] [demand letters directed toward settlement of anticipated lawsuit are "in furtherance of litigation" and thus protected].) More important, "communications made in connection with litigation do not necessarily fall outside the privilege merely because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal" assuming they are logically related to litigation. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 920 [120 Cal.Rptr.2d 576].)

 Nor do we agree with plaintiffs that *Fuhrman v. California Satellite Systems, supra,* 179 Cal.App.3d 408 (disapproved on other ground *Silberg v. Anderson, supra,* 50 Cal.3d at p. 219), compels a different result. In *Fuhrman,* a satellite television company sent approximately 8,700 demand letters as part of its antipiracy campaign, triggering the plaintiffs' class action lawsuit alleging extortion and fraud, among other things. In reversing the sustaining of the defendant's demur to the complaint, *Fuhrman* held that whether the letters were sent in good faith and serious contemplation of litigation under the Civil Code section 47, subdivision (b)(2) privilege, was a factual question that could not be decided on demurrer. (*Fuhrman v. California Satellite Systems, supra,* at p. 422.) While similar to this case, *Fuhrman* differs in one crucial respect: The decision in that case was based on a demurrer where factual determinations are not permissible. Here, however, the trial court *must consider facts so as to make a determination whether plaintiffs can establish a prima facie probability of prevailing on their claims.* (Code Civ. Proc., § 425.16, subd. (b)(1); *HMS Capital, Inc. v. Lawyers Title Co., supra,* 118 Cal.App.4th at p. 212.) Thus, while the court does not weigh evidence, it must determine whether plaintiffs have demonstrated evidence which, *if credited,* would justify their prevailing at trial. The court also considers DIRECTV's evidence to determine if it has defeated that submitted by plaintiffs as a matter of law. (*HMS Capital, Inc., supra,* 118 Cal.App.4th at p. 212.) Here, defendant has demonstrated that it sent the demand letters, citing statutory authority (18 U.S.C. §§ 2511(1)(a) & 2520(b); 17 U.S.C. § 1201(a)(1); 47 U.S.C. § 605(a) & (b)); and it has filed lawsuits against thousands of defendants so far. Thus, DIRECTV demonstrated a logical relation between its demand letters and the lawsuits. At best plaintiffs have demonstrated a dispute about the applicability of the privilege, whereas DIRECTV has defeated plaintiffs' evidence. Because plaintiffs cannot show prima facie their probability of prevailing on the merits, as a matter of law, the trial court properly concluded that the litigation privilege applied. (Civ. Code, § 47, subd. (b).)

Likewise inapposite is *Drum v. Bleau, Fox &* Associates (2003) 107 Cal.App.4th 1009 [132 Cal.Rptr.2d 602]. *Drum* involves an anti-SLAPP motion to strike a claim of abuse of process, for which an element is the defendant's "ulterior motive" in commencing the underlying action. (*Id.* at p. 1019.) " 'Ulterior motive' is *a state of mind*, which, like other states of mind, can seldom be proved by direct evidence. It must be inferred from objective or external circumstantial evidence." (*Id.* at p. 1021, italics added.) By contrast, it is now well established that the litigation privilege applies without regard to "motives, morals, ethics or intent." (*Silberg v. Anderson, supra*, 50 Cal.3d at p. 220.) The litigation privilege is simply a test of connectedness or logical relationship to litigation. (*Aronson v. Kinsella, supra*, 58 Cal.App.4th at p. 266.)

In short, plaintiffs' showing *failed to demonstrate prima facie* that they could overcome the litigation privilege. By contrast, DIRECTV demonstrated that the privilege does apply. The trial court properly ruled that the demand letters are absolutely privileged under Civil Code section 47, subdivision (b). As a matter of law, plaintiffs are unable to demonstrate prima the second prong of the analysis under Code of Civil Procedure section 425.16.

■ There remains plaintiffs' repeated assertion that we should reverse the judgment to afford plaintiffs additional discovery. Once a special motion to strike under Code of Civil Procedure section 425.16 is filed, discovery is stayed until notice of entry of the order on the motion (§ 425.16, subd. (g)), unless "for good cause shown" a request for specified discovery is made. (*Ibid.*; *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1189–1190 [121 Cal.Rptr.2d 794].) "We review for abuse of discretion as to the trial court's decision whether a plaintiff has complied with the requirements of section 425.16, subdivision (g) to merit discovery prior to a hearing on the motion to strike. [Citations.]" (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1247 [132 Cal.Rptr.2d 57].) Plaintiffs argue they sought to obtain " 'business records' " to determine whether the recipients of the demand letters intercepted signals illegally and to establish whether the letters contained deceptive or misleading statements. However, the litigation privilege renders any such evidence irrelevant to the court's determination. (*Silberg v. Anderson, supra*, 50 Cal.3d at p. 218 [listing numerous cases in which fraudulent communications or perjured testimony were held privileged].) Otherwise, plaintiffs did not demonstrate any other facts they expected to uncover in their discovery that would negate the privilege. The trial court did not abuse its discretion in denying additional discovery.

III. *The attorney fees appeal.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. DIRECTV shall recover its costs and attorney fees on appeal, the amount of which shall be determined by the trial court.

Croskey, Acting P. J., and Kitching, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 26, 2005. George, C. J., did not participate therein.

---

[*]See footnote, *ante*, page 903.